DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, wherein, appellant, Elissa A. Schuster, was convicted of: (1) one count of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(2), a second degree felony; (2) one count of the illegal use of a minor in nudity oriented material in violation of R.C. 2907.323(A)(2) and (B), a felony of the second degree; and (3) one count of rape, a violation of R.C.2907.02(A)(1)(b) and (B), a *Page 2 
felony of the first degree. The jury further determined that the victim was under ten years of age at the time of the offenses.
 {¶ 2} The trial court sentenced appellant to a term of four years in prison on the conviction for the violation of R.C. 2907.321(A)(2), four years in prison for the violation of R.C. 2907.323(A)(2) and (B), and life in prison with parole eligibility after the service of ten years in prison for the violation of R.C. 2907.02(A)(1)(b) and (B). The court further ordered that the three sentences imposed for these convictions were to be served consecutively. Finally, the judge determined that appellant was a sexually oriented offender and that the victim was under 13 years of age.
 {¶ 3} Appellant appeals the trial court's judgment and claims that the following errors occurred in the proceedings below:
 {¶ 4} "1. Appellant received ineffective assistance of counsel in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of Ohio."
 {¶ 5} "2. The trial court committed error in defining `sexual conduct' in the jury instructions."
 {¶ 6} "3. The offenses of pandering obscenity involving a minor, illegal use of a minor in nudity oriented material, and rape involved allied offenses of a similar import under R.C.2941.25 and the trial court erred by entering a separate conviction and sentence for each." *Page 3 
 {¶ 7} "4. The trial court erred to the prejudice of Ms. Schuster by sentencing her to non-minimum, consecutive sentences and must be remanded to the trial court for resentencing in light of State v.Foster, or, in the alternative, trial counsel was ineffective in not raising the Foster issue."
 {¶ 8} "5. The verdict as to rape, R.C. 2907.02(A)(1)(b) and (B), is supported by insufficient evidence and is against the manifest weight of the evidence."
 {¶ 9} "6. The errors in trial were cumulative, thereby leading to a wrongful verdict, in violation of appellant's constitutional rights of due process."
 {¶ 10} The underlying facts of this cause, as adduced at appellant's jury trial, are as follows.[1]
 {¶ 11} During the summer of 2004, appellant and her husband, Thomas J. Schuster, separated. Appellant and the couple's four-year-old daughter resided in an apartment complex located in Sylvania, Lucas County, Ohio, while Thomas moved in with his grandparents. Apparently, there was an alleged "break-in" at the apartment complex that made appellant afraid to sleep at night. Therefore, Thomas agreed to watch their daughter at appellant's apartment during the day while she slept.
 {¶ 12} On September 5, 2004, Thomas was babysitting his daughter when he discovered a document on appellant's computer that contained an internet conversation between appellant, who used the internet name of "Lustylis429," and an individual using the online name of "Buckin4God2." Based upon the content of the internet messages *Page 4 
between appellant and this individual, Thomas had reason to believe that appellant e-mailed nude photographs of their daughter to Buckin4God2. Thomas printed a copy of the e-mails and turned them over to Detective Laura Bliss of the Sylvania Police Department.
 {¶ 13} On September 6, 2004, Detective Bliss, as well as other detectives from her department, executed a search warrant at appellant's apartment. The detective interviewed appellant and asked her whether she had posted any nude photographs of her daughter on the internet. Eventually, appellant told Detective Bliss that she sent a frontal nude photograph of her child to a Ronde Barber, a.k.a. Buckin4God2. According to Elissa, Barber, who pretended to be an NFL football player, told her that he would give her a $14,000 ring and marry her if she sent him the photographs. Appellant also told the detective that Barber wanted her to insert a vibrator into her daughter, but appellant declined to do so because the vibrator was "nasty," specifically, the paint was chipped. Instead, appellant e-mailed Barber a photograph in which her finger was on or in her child's vaginal area.
 {¶ 14} Katie Wilson, a social worker employed by Lucas County Children Services, was assigned to investigate the alleged sexual abuse of appellant's daughter. She conducted a videotaped interview of the child on September 10, 2004. During the interview, the four year old told Wilson that her mother touched her three times with a "stick" in her vaginal area and that her mother took photographs of her while the child *Page 5 
was naked. Based upon the foregoing information, Wilson referred the victim to Randall S. Schlievert, M.D., for a physical examination.
 {¶ 15} Dr. Schlievert, a pediatrician who specializes in the field of child abuse and neglect, examined appellant's daughter but did not find any objective physical evidence of injury to the vaginal area. The child's hymen was intact. In his testimony, the doctor described the female genitalia. The outmost portion of that area are the outer lips or labia majora, which are covered with skin. Inside those are a smaller pair of lips called the labia minora, next is the vestibule, beyond that is the hymen, and then the vagina. Dr. Schlievert further testified that "vulva" is a medical term used to designate the entire genital area.
 {¶ 16} In her first assignment of error, appellant contends that she was denied effective assistance of counsel.
 {¶ 17} Article I, Section 10 of the Ohio Constitution and theSixth Amendment to the United States Constitution guarantee a criminal defendant the effective assistance of counsel. McMann v. Richardson
(1970), 397 U.S. 759. The standard used to decide if a defendant "`had effective retained counsel is whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done.'" State v. Harwell, 149 Ohio App.3d 147, 2002-Ohio-4349 ¶ 15, quoting State v. Hester (1976),45 Ohio St.2d 71, paragraph four of the syllabus. In determining this issue, an appellate court applies the same test utilized in determining ineffective assistance of appointed counsel. See, e.g., State v.Jordan, 10th Dist. No. *Page 6 
04AP-827, 2005-Ohio-3790; State v. Castile, 6th Dist. No. E-02-012, 2005-Ohio-041; State v. Zachery, 5th Dist. No. 2004CA00091,2004-Ohio-6282.
 {¶ 18} To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonable representation and, in addition, that prejudice arose from counsel's deficient performance. Strickland v.Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus. Both prongs of theStrickland test must be met before an appellate court can deem trial counsel's representation of his or her client ineffective.Strickland v. Washington, at 687. Thus, even if an appellate court finds that an attorney was deficient in some respect in his or her representation of a defendant, the defendant must still prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 19} Appellant first argues that her retained counsel was ineffective because he was not prepared for trial. In particular, appellant alleges that her trial attorney never viewed the videotape of Katie Wilson's interview of appellant's daughter. She also urges that he improperly "opened the door" and allowed the admission of testimony of a child *Page 7 
who was found incompetent[2] into evidence, both through the videotape and Wilson's testimony.
 {¶ 20} Prior to appellant's trial, the state of Ohio indicated that it did not intend to submit the videotaped interview at trial because no hearing was held to determine the victim's competency to testify. At that point, appellant's retained out-of-state counsel, Frank Policelli, who was admitted pro hac vice, stated that he had not seen the video, but would view it that same day. During his opening argument defense counsel referred to the videotaped interview, saying Wilson would testify that the child twice denied that her mother ever touched her. When the prosecution objected, appellant's attorney, after a discussion with the judge, acknowledged that he had opened the door for the admission of the videotape into evidence. Thereafter, statements made by the victim during the interview, including statements relayed by Kate Wilson and Dr. Schlievert were heard by the jury. Furthermore, the videotaped interview was seen by the jury during the defense's case-in-chief.
 {¶ 21} It is clear from the record of this cause that appellant's trial counsel did view the videotaped interview prior to opening arguments and that his strategy was to use the interview to create a question as to whether appellant's child was touched by her mother at all and/or that the child, who was awakened at 12:30 a.m. by her mother, was confused because she said that her mother touched her with a stick in the area where she goes "potty." While the merits of this strategy may be debatable, this tactical decision *Page 8 
does not constitute ineffective assistance of counsel. State v.Campbell, 6th Dist. No. L-05-1284, 2006-Ohio-4435, ¶ 20; State v.Boyd, 6th Dist. No. L-04-1147, 2006-Ohio-4132, ¶ 22, citing State v.Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171.
 {¶ 22} Moreover, appellant fails to establish that but for her counsel's alleged error in this regard, the outcome of her trial would have been different. In order to establish prejudice from her counsel's purported ineffectiveness, appellant must prove that there exists a reasonable probability that the outcome of the proceedings would have been different were it not for counsel's errors. State v. Keith (1997),79 Ohio St.3d 514, 534, 1997-Ohio-367. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. State v.Bradley, 42 Ohio St.3d at 142. Here, and based upon the other evidence presented at trial, appellant cannot demonstrate a reasonable probability that the outcome of her trial would have been different.
 {¶ 23} Appellant also asserts that her trial counsel was ineffective because he essentially conceded her guilt on the charges of pandering obscenity involving a minor and the illegal use of a minor in nudity oriented material. It appears from a reading of the trial transcript, especially a reading of defense counsel's closing argument, that counsel did, in the face of overwhelming evidence, concede to the lesser two of the three charges. His main focus was on the charge of rape, which, if appellant was found guilty by the trier of fact, carried a mandatory life sentence in prison . See R.C. 2907.02(B). Again, this was a strategic decision on the part of trial counsel, and even if it was debatable strategy, does not constitute ineffective assistance of counsel. *Page 9 
 {¶ 24} Appellant next argues that Policelli's performance was deficient because he did not object to separate convictions and sentences for allied offenses of a similar import. This argument is intertwined with her third assignment of error in which appellant contends that pandering obscenity involving a minor, illegal use of a minor in nudity oriented material, and rape are allied offenses of a similar import. Thus, we shall address appellant's third assignment of error within the context of her ineffective assistance of counsel claim. In doing so, we must remind appellant that in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. Crim.R. 52(B).
 {¶ 25} The plain error doctrine represents an exception to the usual rule that errors must first be presented to the trial court before they can be raised on appeal and permits an appellate court to review an alleged error where necessary to prevent a manifest "miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, 96. In order to prevail under a plain error standard, an appellant must demonstrate both that there was an obvious error in the proceedings and that, but for the error, the outcome of the trial clearly would have been otherwise.State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62.
 {¶ 26} As applied to the present case, if the three offenses underlying appellant's convictions and sentences are allied offenses of a similar import, plain error occurred in imposing cumulative punishments for the same offense. We shall therefore address appellant's arguments on this issue. *Page 10 
 {¶ 27} The Double Jeopardy Clause of the United States Constitution and Section 10, Article I, Ohio Constitution, proscribe successive prosecutions and cumulative punishments for the same offense. State v.Rance, 85 Ohio St.3d 632, 634, 1999-Ohio-291. Nonetheless, when legislative intent in enacting a multiple-count statute is clear, cumulative sentencing for the commission of certain offenses is not unconstitutional. Id. at 635-636. Ohio's multi-count statute, R.C.2941.25[3] permits punishment for multiple offenses of dissimilar import. R.C. 2941.25(B). However, it prohibits multiple punishments in those cases where the same conduct/single action leads to an allied offense of a similar import. R.C. 2941.25(A).
 {¶ 28} Pursuant to Rance, determination of whether the multiple offenses are of a similar import involves a two-step process. Id. First, a court must decide whether the elements of the offenses are such that the commission of one offense necessarily includes the commission of the other offense. This is done by an examination of the criminal elements of the offenses in the statutory abstract. Id. at paragraph one of the syllabus. If the elements do not correspond, they are offenses of a dissimilar import, and a court's *Page 11 
inquiry is, therefore, at an end. Id. If they do correspond, a court examines a defendant's conduct to determine whether the crimes were committed separately or with a separate animus. Id. at 639; State v.Jones, 78 Ohio St.3d 12, 14, 1997-Ohio-38. If the examination of the conduct results in a finding that it comprised a single criminal act or that it was committed with but one animus, the defendant cannot be convicted of both offenses and receive multiple punishments for those offenses. Id. (Citation omitted.).
 {¶ 29} Quoting State v. Willis, 1st Dist. No. C-040588,2005-Ohio-5001, ¶ 6, appellant asserts that "[i]t appears that the Ohio Supreme Court is retreating from its strict comparison-of-the-statutory elements test" set forth in Rance. Based upon this assertion, appellant maintains that we need only determine whether there was a separate animus for each of the charged offenses. For the following reason, we find that Rance has not been overruled.
 {¶ 30} The Willis case involved charges of kidnapping, attempted rape, and robbery. Id. at ¶ 1. Relying on State v. Adams, 103 Ohio St.3d 508,2005-Ohio-5845, the First Appellate District found that it only needed to examine whether each of the offenses were committed with a separate animus. However, the Willis court failed to recognize the fact that the offenses, kidnapping, robbery and rape, in Adams were previously determined to be allied offenses of a similar import in another Ohio Supreme Court case. See State v. Logan (1979), 60 Ohio St.2d 126, 128, citing State v. Donald (1979), 57 Ohio St.2d 73. Furthermore, even though Logan was a pre-Rance decision, the Logan *Page 12 
court essentially applied the test set forth in Ranee by engaging in a comparison of the statutory elements of kidnapping and murder in the abstract. Id. at 129-130.
 {¶ 31} Next, we must consider the effect of the Ohio Supreme Court's decision in State v. Cooper, 104 Ohio St.3d 293, 2004-Ohio-6553, on the applicability of Ranee to a case such as the one before us. InCooper, the defendant was charged with one count of child endangering and one count of involuntary manslaughter. Id at ¶ 1. The charges were predicated on the death of the defendant's 18 month-old stepson. Id. at ¶ 3. The defendant claimed that these offenses were allied offenses of a similar import under R.C. 2941.25. Id. at ¶ 2. In rejecting the defendant's assertion, the Cooper court first noted that a court is only required to engage in an "allied-offense analysis when the same conduct, or single act, results in multiple convictions." Id. at ¶ 17.
 {¶ 32} In Cooper, expert testimony at trial revealed that the child's head injuries were the result of (1) shaken baby syndrome; and (2) the child's head being slammed against a hard surface. Id. at ¶ 23 — ¶ 25. TheCooper court found that the defendant's convictions did not arise from a single act, but from the separate acts of slamming the child's head against a hard surface (involuntary manslaughter conviction) and shaking the baby (child endangering). The court, however, further stated: "Our decision does not alter our holding in Ranee, because Ranee is not implicated by the facts of this case." Id. at 29.
 {¶ 33} We are of the opinion that in Cooper the Ohio Supreme Court was applying the strictures of R.C. 2941.25(A), which states that the "same conduct" must be *Page 13 
the basis for finding that two or more offenses are allied offenses of a similar conduct. We, therefore, conclude that Rance has not been overruled by the Ohio Supreme Court and the standard set forth therein is still viable.
 {¶ 34} In the present case, appellant e-mailed two nude photographs of her four-year-old daughter to Buckin4God2. One was the photograph showing appellant's finger on or in the child's vaginal area. In this first photograph, the child's face is not shown. This photograph was e-mailed separately from a second photograph. In the second photograph, which was requested by Buckin4God2, the child is nude and her face is revealed. Thus, we have two separate instances of conduct, not a single act. Accord, State v. Stone, 1st Dist. No. C-040323, 2005-Ohio-5206
(Five images of children engaging in sexual activity that were downloaded to a computer in a two minute period are five separate acts).
 {¶ 35} Nevertheless, because we have three charged offenses based upon only two underlying acts, we must follow Rance and first determine whether, in the abstract, the elements of any of these offenses correspond with any of the other offenses to the point where the commission of one offense necessarily includes the commission of the other offense. R.C. 2907.321(A)(2) reads, in pertinent part:
 {¶ 36} "(A) No person with knowledge of the character or material or performance involved shall do any of the following:
 {¶ 37} "(1) * * * *Page 14 
 {¶ 38} "(2) Promote or advertise for sale or dissemination, * * * deliver, * * * display, or provide any obscene material that has a minor as one of its participants * * *.
 {¶ 39} "Obscene" material is defined in R.C. 2907.01(F) as any matter, "judged with reference to ordinary adults, to which any of the following apply:
 {¶ 40} "(1) Its dominant appeal is to prurient interest;
 {¶ 41} "(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, * * * or nudity in a way that tends to represent human beings as mere objects of sexual appetite; * * *."
 {¶ 42} "(3) * * *
 {¶ 43} "(4) * * *
 {¶ 44} "(5) It contains a series of displays or descriptions of sexual activity * * * [or] nudity * * *, the cumulative effect of which is a dominant tendency to appeal to purient or scatological interest, when the appeal to such interest is primarily for its own sake."
 {¶ 45} R.C. 2907.323, provides, in relevant part:
 {¶ 46} "(A) No person shall
 {¶ 47} "(1) * * *
 {¶ 48} "(2) * * * photograph the person's minor child or ward, in a state of nudity or consent to the use of the person's minor child or ward in a state of nudity in any material or performance, or use or transfer a material or performance of that nature, * * *." *Page 15 
 {¶ 49} In comparing the elements of R.C. 2907.321 with those of R.C.2907.323, we conclude that the commission of one of these offenses does not necessarily include the commission of the other offense. First, R.C.2907.321 has an intent element requiring that a defendant have the knowledge of the character of the material or performance. R.C. 2907.323
does not have this element. On the other hand, R.C. 2907.323 expressly requires that the minor be in a "state of nudity." While nudity is mentioned as one of the prohibited acts in R.C. 2907.321, it is not the sole required act. Therefore, the elements of the offenses do not correspond, and they are not allied offenses of a similar import within the meaning of R.C. 2941.25(A).
 {¶ 50} Next we must determine whether the elements of either of these offenses correspond with the elements of rape.
 {¶ 51} R.C. 2907.02(A)(1), the rape statute, provides, in material part, the following:
 {¶ 52} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 {¶ 53} "(a) * * *
 {¶ 54} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 {¶ 55} R.C. 2907.01(A)(1) defines "sexual conduct" as "vaginal intercourse between a male and a female, anal intercourse, fellatio, and cunnilingus between persons, regardless of sex, and without privilege to do so, the insertion, however slight, of any *Page 16 instrument, apparatus, or other object into the vaginal or anal cavityof another. Penetration, however slight, is sufficient to completevaginal or anal intercourse." (Emphasis added.)
 {¶ 56} Clearly, the rape statute requires penetration of the vaginal or anal cavity, however slight, of another, whereas neither R.C.2907.321 nor R.C. 2907.323 have that requirement. Moreover, as applicable to this action, R.C. 2907.01(A)(1)(b) has an age requirement, under 13 years of age, while both R.C. 2907.321 and R.C. 2907.323 apply to any minor, including those minors over the age of 13. Accordingly, the elements of R.C. 2907.02(A)(1) do not correspond with those of either R.C. 2907.321 or R.C. 2907.323. Consequently, they are not allied offenses of a similar import and did not need to be merged for the purpose of sentencing. Thus, appellant's trial counsel did not err in failing to raise this issue in the common pleas court, and her third assignment of error is found not well-taken. It follows that counsel was not ineffective for failing to raise this question in the trial court and that portion of appellant's first assignment of error related to this issue lacks merit.
 {¶ 57} Under her first assignment of error, appellant next argues that her trial counsel was ineffective because he discussed appellant's "other bad acts," which were not admissible under Evid.R. 404(B), during his closing argument.
 {¶ 58} In his closing argument, Attorney Policelli stated:
 {¶ 59} "Let's not talk about, well, you know, she's a terrible person, she's a bad mother, she's this, she's that. She has sex toys. She talks dirty on the internet. She's *Page 17 
trying to get money out of a football player. That she's — that's another thing, why didn't [Detective] Bliss — you mean Bliss didn't realize that there was something she needed to discuss with this girl because of her bizarre behavior. I mean she's either drunk or on drugs or she's so emotionally unstable that she does need help. But thequestion isn't that for you to decide. The question is what does thisevidence prove. "(Emphasis added.)
 {¶ 60} It is axiomatic that opening and closing arguments are not evidence. State v. Frazier (1995), 73 Ohio St.3d 323, 338,1995-Ohio-235. Thus, Evid.R. 404 is not implicated in our disposition of this issue. Rather, the question here is one of prejudice to appellant's case. A careful reading of trial counsel's statements reveals that he was actually trying to encourage the jurors to concentrate on the evidence in this case instead of focusing on appellant's behavior and the possible underlying reasons for that behavior. Again, while the soundness of this strategy is debatable, it does not constitute ineffective assistance of counsel. Therefore, appellant's arguments in this regard are meritless.
 {¶ 61} Finally, appellant contends that her trial counsel was ineffective because he failed to object to the non-minimum, consecutive sentences imposed by the trial court in contravention of the Ohio Supreme Court's holding in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. Appellant's sentencing hearing was held on October 27, 2005, and the court's judgment on sentencing was entered on October 28, 2005. Foster was released by the Ohio Supreme Court on February 27, 2006. Therefore, trial counsel could not have raised the law set forth in Foster before or at the time of sentencing because that law did not exist. *Page 18 
 {¶ 62} For all of the foregoing reasons, appellant's first assignment of error is found not well-taken.
 {¶ 63} In her second assignment of error, Schuster claims that the trial court granted, over appellant's objection, the state's request to expand the definition of "sexual conduct" to include "penetration of the of the external female genitalia known as the vulva or the labia is sufficient for penetration [under the rape statute]."
 {¶ 64} An appellate court will not reverse a trial court's decision to give a particular jury instruction absent an abuse of discretion.State v. Johnson, 11th Dist. No. 2001-A-0043, 2002-Ohio-6570, at ¶ 24. (Citation omitted.) An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary, or unconscionable. State v.LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 40.
 {¶ 65} As set forth infra, the statutory definition of "sexual conduct" means, among other things, "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however, slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 66} Appellant relies on State v. Wells, 91 Ohio St.3d 32,2001-Ohio-227, in arguing that a "cavity" within the meaning of 2907.01(A)(1) is a "natural hollow place within the body," Appellant then quotes the definition of "vagina" from Webster's Unabridged Dictionary as being "`a passage leading from the uterus to the vulva'" and the "vulva" as being "`the external female genitalia." These same definitions are found in Webster's Collegiate Dictionary (11 Ed. Rev. 2003) at, respectively, 1380 and 1404. *Page 19 
 {¶ 67} Initially, we reject the comparison of this cause to State v.Wells because that case involved an alleged penetration of the anal cavity, not the vagina. Id. at 35. Moreover, a number of appellate court's, including this court, have held that penetration of the labia is sufficient to prove penetration of the vagina for the purpose of satisfying R.C. 2907.02. See, e.g., State v. Gilbert, 10th Dist. No. 04AP-933, 2005-Ohio-5536 (Insertion of fingers into the labia sufficient to prove rape); State v. Roberts, 1st Dist. No. C-040547, 2005-Ohio-6391(penetration of the labia is sufficient evidence of rape if the labia are "spread."); State v. Grant, 2d Dist. No. 19824,2003-Ohio-7240 (entry into the vulva or labia is sufficient penetration to prove rape); State v. Ulis ((July 23, 1994), 6th Dist. No. L-93-247 (entry of the anterior of the female genital organ, the labia, is sufficient penetration to constitute rape).
 {¶ 68} Accordingly, we conclude that case law supports the trial court's giving of the instruction supplementing the statutory definition of "sexual conduct." Therefore, the trial court did not abuse its discretion in providing this instruction to the jury. Appellant's second assignment of error is found not well-taken.
 {¶ 69} We now move to appellant's fourth assignment of error, in which she contends that, in light of the Ohio Supreme Court's decision inState v. Foster, the trial court impermissibly engaged in judicial fact-finding in sentencing her to non-minimum, consecutive sentences. The trial court could not follow Foster in sentencing appellant because that case did not exist at the time that appellant was sentenced. Nevertheless, while this appeal was pending, the Ohio Supreme Court released Foster, which held that *Page 20 
the felony sentencing provisions of the Ohio Revised Code relating to non-minimum (R.C. § 2929.14(B)), maximum (R.C. § 2929.14(C)), and consecutive sentences (R.C. § 2929.14(E)(4)) are unconstitutional because they require a judicial finding of facts not proven to a jury.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs one and three of the syllabus. The Foster court specified that its decision applied to cases pending on direct appeal. Id. at ¶ 106.
 {¶ 70} Since appellant was sentenced to non-minimum[4] and consecutive sentences under statutes found to be unconstitutional by the Ohio Supreme Court, and her direct appeal was pending whenFoster was released, we hereby vacate the sentence and must remand this case to the trial court for further proceedings consistent withFoster. Appellant's fourth assignment of error is found well-taken.
 {¶ 71} In her fifth assignment of error, appellant asserts that the verdict finding her guilty of rape is supported by insufficient evidence and is against the manifest weight of the evidence offered at her trial. In particular, appellant claims that no evidence was presented at her trial to establish penetration of her child's "vaginal cavity," She also maintains that there was no medical evidence offered to show that a rape occurred.
 {¶ 72} A criminal conviction may be overturned on appeal if it is against the manifest weight of the evidence or due to a lack of sufficient evidence. When examining whether a conviction is against the manifest weight of the evidence, an appellate court *Page 21 
serves as a thirteenth juror in deciding whether the trial court lost its way to a point where it creates a manifest miscarriage of justice.State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In reaching this decision, an appellate court can examine the record, weigh the evidence and all reasonable inferences therefrom, and consider witness credibility. Id. Because it is the trial court that directly observes the witnesses and the evidence in reaching its conclusion, an appellate court gives substantial deference to trial court determinations.State v. Mickles, 6th Dist. No. L-05-1206, 2006-Ohio-3803, ¶ 46.
 {¶ 73} When addressing the question of sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, ¶ 47, citingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Sufficiency tests the adequacy of the evidence offered at trial.State v. Thompkins, 78 Ohio St.3d at 386. Thus, whether the evidence is legally sufficient to sustain a verdict is a question of law. Id.
 {¶ 74} In the present case, we have already held that "sexual conduct" as used in Ohio's rape statute includes penetration of the labia. The enlarged photograph of appellant's finger on her daughter's genital area was entered into evidence at appellant's trial. Based upon that photograph, the jury, as the trier of fact, could conclude that appellant's finger was within the child's labia. We, as the thirteenth juror, will not disturb that conclusion. Furthermore, in viewing the photograph in a light most favorable to the *Page 22 
prosecution, a rational trier of fact could the find that the element of penetration was proven beyond a reasonable doubt. Finally, although Dr. Schlievert found no physical injury to the victim's genitalia, he also testified that a vast majority of the children he has examined as the result of claims of sexual abuse have a normal examination because (1) whatever object that is used to penetrate the vaginal area never reaches the hymen; and (2) any injury to the outer area of the genitals heals very quickly. Accordingly, appellant's fifth assignment of error is found not well-taken.
 {¶ 75} In her sixth assignment of error, appellant argues that the cumulative effect of the errors made at her trial deprived her of her constitutional right to a fair trial. As observed in State v.Garner, 74 Ohio St. 3d 49, 64, 1995-Ohio-168: "The doctrine is not applicable to the case at bar as we do not find multiple instances of harmless error." Because we do not find multiple instances of harmless error in this cause, appellant's sixth assignment of error is found not well-taken.
 {¶ 76} The judgment of the Lucas County Court of Common Pleas is affirmed in all respects except sentencing. This cause is remanded to that court for the sole purpose of re-sentencing appellant pursuant toState v. Foster, 109 Ohio St.3d 1. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED IN ALL RESPECTS EXCEPT SENTENCING. *Page 23 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Arlene Singer, J., Thomas J. Osowik, J., George M. Glasser, J., Concur.
[1] Any other facts necessary to our disposition of a particular assignment of error shall be disclosed in our discussion of that assignment.
[2] Schuster's appellate counsel insists that the victim was found to be not competent to testify. However, the record reveals that no competency hearing was ever held.
[3] R.C. 2941.25 provides:
 "(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
[4] This applies only to the sentences imposed for the violations of R.C. 2907. 321 and R.C. 2907.323. Because the jury found that the victim was less than ten years old at the time of the rape, the life sentence for the violation of R.C. 2907.02(A)(1)(b) was mandatory. See R.C.2907.02(B). *Page 1